11-1287-pr
JS v. T'Kach

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

——————————————

August Term, 2011

(Argued: May 22, 2012                    Decided: April 10, 2013)

Docket No. 11-1287-pr

——————————————

J.S.,

*Plaintiff-Appellant*,

– v. –

STEPHEN T'KACH, Director Office of Enforcement Operations (OEO), in his Individual Capacity, EILEEN RULEMAN, Chief of OEO, in her Individual Capacity, JENNIFER SEQUI, Coordinator of OEO, in her Individual Capacity, DONNA HILL, Unit Manager F.C.I., Otisville, N.Y., in her Individual Capacity, and LOUIS SCIALABBA, Counselor at F.C.I. Otisville, N.Y., in his Individual Capacity,

*Defendants-Appellees*.[1]

——————————————

Before:

B.D. PARKER, HALL, and WALLACE\**Circuit Judges*.

——————————————

---

[1] The Clerk of the Court is respectfully directed to amend the caption as set forth above.

\* Judge J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Plaintiff-appellant, JS, alleges that he was terminated from the Justice Department's Witness Security Program without due process and that his subsequent 188 days' placement in a Segregated Housing Unit violated his Fifth and Eighth Amendment rights. After concluding that it lacked subject matter jurisdiction over JS's claim concerning his termination from the Program, the district court *sua sponte* dismissed the complaint. We AFFIRM the dismissal of JS's claim concerning his termination but VACATE the dismissal of his claims concerning his subsequent confinement and REMAND for further proceedings.

AFFIRMED in part and VACATED in part and REMANDED.

B.D. Parker, *J.*, delivered the opinion of the Court, in which Wallace and Hall, *JJ.*, joined. Hall, *J.*, filed a concurring opinion, in which B.D. Parker, *J.*, joined.

—————————————

DOUGLAS F. BRODER (Philip Rogers, *on the brief*) K&L Gates LLP, New York, New York *for Plaintiff-Appellant.*

JAMES NICHOLAS BOEVING, Assistant United States Attorney (Sarah Sheive Normand, Assistant United States Attorney, *on the brief*) *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York *for Defendants-Appellees.*

—————————————

B.D. PARKER, *Circuit Judge*:

Plaintiff-appellant, JS, formerly a participant in the Justice Department's Witness Security Program ("the Program"), brings this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that he was terminated from the Program without being afforded procedural due process. JS also alleges that following his

termination he was placed in a Segregated Housing Unit ("SHU") for 188 days and that this confinement violated due process and constituted cruel and unusual punishment. The United States District Court for the Southern District of New York (Buchwald, *J.*), relying on *United States v. Gigante*, 187 F.3d 261 (2d Cir. 1999), held that it lacked subject matter jurisdiction over JS's termination claim and, without reaching the sufficiency of his solitary confinement claims, *sua sponte* dismissed the complaint. We AFFIRM the district court's dismissal of JS's due process claim with regard to his termination from the Program. However, we REMAND to permit JS to replead with respect to his confinement in the SHU.

**BACKGROUND**

The following facts are drawn from the complaint, the allegations of which, at this stage, we accept as true. *See Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). JS is a federal prisoner who was incarcerated at the Federal Correctional Institution ("F.C.I.") Otisville and who participated in the Program from December 2007 until March 2010. JS's participation was governed by a Witness Security Program Prisoner-Witness Agreement (the "written agreement") and a Memorandum of Understanding ("MOU") between JS and the Department of Justice.

The Attorney General has "broad discretion to administer" the Program. *Doe v. Civiletti*, 635 F.2d 88, 97 (2d Cir. 1980); *see also Bergmann v.United States*, 689 F.2d 789, 793 (8th Cir. 1982). This discretion is reflected throughout the governing statute. Whether or not a witness will be protected under the program is within the Attorney General's discretion. *Abbott v. Petrovsky*, 717 F.2d 1191, 1193 (8th Cir. 1983); *see also* 18 U.S.C. § 3521(a)(1) ("The Attorney General *may* provide for the relocation and other protection of a witness or a potential witness." (emphasis added)). Once a witness is admitted, the type and level of protection afforded is also within the Attorney General's discretion, and may continue for as long as, in the judgment of the Attorney General, the danger to that person exists. 18 U.S.C. § 3521(b)(1). An individual's

participation in the Program is voluntary, and an individual who joins is free to leave at any time. *Hertzke v. Riley*, 715 F. Supp. 117, 120 (E.D. Pa.), *aff 'd*, 891 F.2d 281 (3d Cir. 1989).

Rule 2b of the written agreement provides that contacting or attempting to contact unauthorized individuals constitutes a breach of the agreement. The MOU provides a similar prohibition on unauthorized contacts. The written agreement states that "[f]ailure to adhere to this Agreement could result in termination of Program services *without notice*" (emphasis in original). Neither the MOU nor the written agreement sets forth the procedures to be followed in the event the Justice Department's Office of Enforcement Operations ("OEO") recommends termination.

In October 2009, the OEO notified JS that it was aware that he had made contact with unauthorized individuals in violation of Rule 2b. On March 9, 2010, the OEO sent JS a termination notice, stating that he had again violated Rule 2b by having unauthorized contacts with unauthorized individuals. The notice instructed JS on how to appeal his termination.

On March 11, 2010, JS filed a Notice of Appeal contending that his termination violated due process because OEO had failed to inform him of whom he was alleged to have contacted. He also contended that, because all his contacts had been approved by staff persons at the institution, he could not have violated the agreement. Louis Scialabba, a counselor at Otisville, reviewed the appeal and forwarded it to OEO with a recommendation that the termination be finalized. JS also wrote to Eileen Ruleman, Chief of OEO, on March 21 expressing his frustration at having been terminated without first being told the factual basis for the termination. OEO received that letter on April 3, 2010.

The record does not indicate that the OEO received JS's March 11 Notice of Appeal, and its written disposition suggests that OEO had received only JS's March 21 letter. That letter did

4

not state the basis for his appeal but merely expressed his displeasure with having been terminated from the Program. OEO concluded that JS had failed to articulate a ground for appeal and affirmed his termination, finding that he had initiated contact on multiple occasions with unauthorized individuals.

On April 19, 2010, Donna Hill, a unit manager at Otisville, gave JS a copy of an order from Stephen T'Kach, Director of OEO, denying the appeal. JS then complained to Hill that OEO had failed to explain the factual basis for the allegations that led to his termination. Hill responded, "OEO doesn't have to go by the same rules as everybody else. They don't have to tell you what you did, you know what you did." Hill then instructed JS to initial T'Kach's order. Immediately upon his initialing the order, prison officials placed JS in the SHU, where he was held for 188 days. In December 2010, JS initiated this *Bivens* action against T'Kach, Ruleman, OEO Coordinator Jennifer Segui, Hill, and Scialabba in their individual capacities alleging that his termination and placement in segregated housing violated his rights under the Fifth and Eighth Amendments.

In February 2011, prior to a responsive pleading, the district court *sua sponte* dismissed the complaint. The district court held that in light of 18 U.S.C. § 3521(f) which provides that "[t]he decision of the Attorney General to terminate [a witness's] protection [under the Program] shall not be subject to judicial review," the court lacked subject matter jurisdiction over JS's due process claim. The court also ruled that the complaint otherwise failed to state a claim on which relief could be granted.[2] This appeal followed.

---

[2] After he appealed, JS moved for the appointment of counsel. We granted the motion. We instructed appointed counsel to brief whether the district court erred in: (1) *sua sponte* dismissing JS's procedural due process claim challenging the process by which he was terminated from the Program, pursuant to 18 U.S.C. § 3521(f), and additionally, whether dismissal of that claim was required under § 3521(a)(3); (2) *sua sponte* dismissing, without addressing, JS's claim that the OEO violated his rights when it placed him in segregation for 188

**DISCUSSION**

We review a district court's *sua sponte* dismissal of an action and its complaint *de novo*. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where, as in this case, the plaintiff is proceeding *pro se*, the district court must construe the complaint liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests. *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir. 2010). Moreover, district courts generally should not dismiss a *pro se* complaint without granting the plaintiff leave to amend. *See Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

A.     Termination from the Program

JS alleges that his participation in the Program constituted a property interest and that he was wrongly deprived of that interest because he was not afforded an opportunity to meaningfully challenge the OEO's decision to terminate him. Specifically, he contends that because he was not informed of the factual basis supporting the termination until after his appeal was denied, he could not properly appeal the termination and the district court erred in concluding that it lacked jurisdiction to review his claims.[3] We disagree.

The Program is governed by 18 U.S.C. § 3521, which the government argues, and the district court held, deprives federal courts of jurisdiction to consider JS's challenge to his

days, insofar as that claim arises under either the Fifth or Eighth Amendments; and/or (3) *sua sponte* dismissing the complaint without leave to replead.

[3] JS does not appeal the dismissal of his Eighth Amendment claim concerning his termination from the Program.

6

termination. As noted, section 3521(f) provides that the Attorney General's decision to terminate protection is not subject to judicial review. Because subject-matter jurisdiction is "a tribunal's power to hear a case," *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) (internal quotation marks omitted), this provision leaves a district court without power or discretion to hear challenges to Program terminations. *See Gigante*, 187 F.3d at 262 (holding that a district court is "without jurisdiction to consider" challenges to Program terminations).

Even though this provision is clear and resort to legislative history is not required, we note that Congress's intention to bar judicial review of terminations and the process through which termination decisions are reached is clearly reflected in the legislative history of § 3521. The original draft of the section, found in H.R. 7039, contained a provision permitting judicial review of the Attorney General's decision to terminate a witness from the Program and of whether the Attorney General had breached the MOU. The initial bill would have allowed the witness to apply for a hearing "to contest the proposed termination of protection to the United States district court" and would have required the Attorney General to provide the witness with notice of the right to request such a hearing. Marshals Service of Process: Hearings Before the Subcomm. on Courts, Civil Liberties, and the Admin. of Justice of the H. Comm. on the Judiciary, 97th Cong., 2d Sess. 8-9 (1982). The bill also provided for a hearing before a magistrate judge to "determine whether or not a substantial breach of the [MOU had] occurred." *Id.* at 8. The Program participant would have then had the right to appeal the magistrate judge's ruling to a district court under a "substantial evidence" standard of review. If the district court determined that the Attorney General had breached the MOU, it would have been authorized to grant injunctive or other appropriate relief. The DOJ opposed the judicial review provisions in the original bill. *Id.* at 184-85 (Testimony of Rudolph W. Giuliani, Associate Attorney General,

7

Department of Justice). A revised provision, proposed in H.R. 4249, eliminated the judicial review proposed in H.R. 7039 and is identical, in relevant part, to the version of § 3521(f) now in force. *Compare* Witness Protection Act: Hearing Before the Subcomm. on Courts, Civil Liberties, and the Admin. of Justice of the H. Comm. on the Judiciary, 98th Cong., 1st Sess. 202, subsection (e) (1983) *with* 18 U.S.C. § 3521(f).

This background demonstrates that Congress intended to bar the courts from reviewing the OEO's decision to terminate participants in the Program. To the extent JS sought such review, his claim was appropriately dismissed. But rather than challenging his termination directly, JS styles his claim as a due process challenge to the OEO defendants' purported failure to provide him notice of the basis for his termination and a fair opportunity to contest the allegations of Program violations. In this regard he maintains that nothing in § 3521 bars the Courts from considering suits grounded in due process against federal officials who deprive participants of the pre-termination procedural protections authorized by the statute.

As a general matter, where Congress exempts a class of governmental determinations from judicial review, the courts do not acquire jurisdiction to hear challenges to the benefits determinations merely because those challenges are cloaked in constitutional terms. *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994); *see also Pappanikoloaou v. Adm'r of Veterans Admin.*, 762 F.2d 8, 9 (2d Cir. 1985) (per curiam) ("[O]ne may not circumvent [a congressional bar to judicial review] by seeking damages on a constitutional claim arising out of a denial of benefits") (collecting cases). At the same time it is true that "'where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear.'" *Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126, 2132 (2012) (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). Consequently, despite the congressional bar to direct judicial review of termination

8

from the Program, we have never reached the possibility that, under some circumstances, "an individual's termination from the Program could form the basis for a claim in a substantive or procedural context." *Gigante*, 187 F.3d at 262. We now turn to one such possibility: does JS's procedural due process claim survive § 3521(f)'s bar?

To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process. *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012). In order to do this, a plaintiff must "first identify a property right, second show that the [government] has deprived him of *that* right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (internal quotation marks omitted). The plaintiff need not prove that he would have ultimately been successful if afforded the process he claims is due; he need demonstrate only that he was deprived of adequate process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544 (1985).

JS does not meet this test. He is unable to show that he has been deprived of a property right for which process is due because "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). As we have seen, under § 3521(a)(1) the Attorney General has broad discretion whether to provide protection. Even after a witness is admitted, the type and level of protection is within the Attorney General's discretion and may continue "for as long as, in the judgment of the Attorney General, the danger to that person exists." 18 U.S.C. § 3521(b)(1). Further, while § 3521(f) states that the "Attorney General may terminate" a participant from the Program for certain enumerated reasons, the statute does not prohibit termination for other reasons. Because Congress did not create a protectable property interest in participation in the Program, the district court correctly dismissed JS's procedural due process claim.

9

Placement in SHU

Next JS challenges the dismissal of his claim that his detention in segregated housing for 188 days violated his Fifth Amendment and Eighth Amendment rights. The government counters that JS did not fully advance these allegations in his complaint and, to the extent that he did, the detention was a discretionary administrative detention derivative of his termination from the Program and therefore also not subject to judicial review. The district court did not address this claim.

We have held that a prisoner has a liberty interest that is implicated by SHU confinement if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In this regard, we consider, among other things, the duration and conditions of confinement. *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). In the absence of factual findings to the contrary, confinement of 188 days is a significant enough hardship to trigger *Sandin*. *See Palmer*, 364 F.3d at 65-66 ("In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short – less than [] 30 days . . . ."); *see also Davis*, 576 F.3d at 135 (remanding for fact-finding concerning 55-day SHU confinement); *Reynoso v. Selsky*, 292 F. App'x 120, 123 (2d Cir. 2008) (remanding for fact-finding concerning 150-day SHU confinement because SHU confinements "between 101 and 305 days . . . require a district court to articulate specific findings of the conditions of the imposed confinement relative to ordinary prison conditions before determining whether such confinement is atypical" and trigger *Sandin.*); *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998) (affirming dismissal of claim concerning 18 days in SHU).

The government contends that JS's confinement was administrative and not punitive in nature. But the record is devoid of any explanation as to why JS was confined to SHU for that period. No one contends that § 3521(f) would permit the government to visit significant, unreviewable punishment on an inmate after his termination from the Program. Thus, without factual findings to the contrary, we have little difficulty concluding that JS's allegation of 188 days of administrative confinement is sufficient to implicate *Sandin*-type liberty interests. *See Davis*, 576 F.3d at 135; *Reynoso*, 292 F. App'x at 123. Because JS has alleged facts with regard to his SHU confinement on which he could plead a Fifth Amendment claim, the district court erred when it dismissed the claim *sua sponte*. *See Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997) ("[W]e have indicated the desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement."). JS should be given leave to replead this claim.

On appeal, JS further contends that his confinement was not merely administrative but was punitive because it was intended to punish his breach of the Program agreement and thus violated the Eighth Amendment's prohibition on cruel and unusual punishment. His complaint, however, does not allege that the detention was punitive in nature. On remand, the district court should grant leave to replead this claim and then assess its sufficiency. We intimate no position on the merits of these claims.

**CONCLUSION**

The district court properly dismissed JS's claim concerning his termination from the Program. However, with respect to SHU detention, the district court should have *sua sponte* granted JS leave to replead before *sua sponte* dismissing the complaint. Accordingly, we AFFIRM in part and VACATE the judgment in part and REMAND for further proceedings.

11

Hall, J., concurring in the judgment, with whom Parker, J., joins:

I agree that JS has alleged facts on which he could plead a Fifth Amendment claim related to his SHU confinement and that the district court erred when it dismissed the claim *sua sponte*. I also agree that the district court should grant leave for JS to replead his Eighth Amendment challenge to his confinement. I write only to articulate the troubling observation that Congress has created procedural guarantees for Witness Security Program ("Program") participants which when violated, as they appear to have been here, give rise to no judicial remedy.

JS's complaint alleges a due process violation for being deprived of an opportunity fully to challenge the determination of the U.S. Department of Justice's Office of Enforcement Operations ("OEO") that he should be terminated from the Program. Because he was never informed of the precise factual basis supporting the termination until after his appeal was denied, JS asserts that he could not adequately challenge the initial termination decision. These allegations, taken as true, present a clear violation of what Congress has mandated as procedural guarantees to which OEO agrees to be bound in the required Memorandum of Understanding ("MOU") that OEO must enter with each participant in the Program.

As our opinion notes, the Program's governing statute, 18 U.S.C. § 3521, places clear limits on judicial review of the adequacy of the grievance and appeals procedure that OEO implements. Section 3521(f) provides that "[t]he decision of the Attorney General to terminate [witness] protection shall not be subject to judicial review." Thus, although JS has pleaded clear violations of the congressionally mandated statutory requirements governing the contents of a MOU and a participant's rights to notice and an appeal, Congress has precluded federal courts from taking jurisdiction to consider such violations. It makes no difference that JS has styled the

1

challenge to his termination from the Program as one sounding in denial of procedural due process because Program participation does not give rise to a protected property interest, termination from which is protected under the Constitution.

Nonetheless, it is beyond cavil that Congress has mandated Program participants receive *some* procedural protections, even if federal courts cannot compel OEO to follow them. In authorizing the Program, Congress directed the Attorney General to enter into a MOU with each participant, and further directed that the MOU must include:

> the procedures to be followed in the case of a breach of the memorandum of understanding, as such procedures are established by the Attorney General. Such procedures *shall* include a procedure for filing and resolution of grievances of persons provided protection under this chapter regarding the administration of the program. This procedure *shall* include the opportunity for resolution of a grievance by a person who was not involved in the case.

18 U.S.C. § 3521(d)(1) (emphasis added). With respect to termination, section 3521(f) prohibits OEO from terminating a participant absent a showing of "substantial[] breach[]" or facts supporting the conclusion that the participant "provide[d] false information concerning the memorandum of understanding or the circumstances pursuant to which the person was provided protection." *Id.* § 3521(f). Additionally, "[b]efore terminating such protection, the Attorney General *shall* send notice to the person involved of the termination of the protection provided under this chapter and the reasons for the termination." *Id.* (emphasis added).

Clearly, Congress intended to insulate from judicial review all aspects of the Attorney General's decision to terminate an individual from the Program. *United States v. Gigante*, 187 F.3d 261 (2d Cir. 1999). Nonetheless, before OEO terminates a protected witness's participation in the Program, Congress explicitly requires OEO to find a "substantial[] breach[]" of a participant's MOU, to provide "notice to the person involved of the termination . . . and the reasons for the termination," and to provide resolution of any grievance by an uninvolved arbiter.

2

*Id.* at § 3521(f). While acceptance into the Program is discretionary, as is the ultimate decision to terminate a participant from the Program, once a participant is accepted into the Program, there is no question that OEO must follow requirements mandated by Congress both with respect to provisions that have to be included in the MOU and with respect to the procedures to be followed before terminating a protected witness's participation in the Program.

On this record, it appears that OEO failed to provide JS, either via the MOU or the prisoner-witness agreement, the procedures required by 18 U.S.C. §§ 3521(d)(1) and 3521(f). Incredibly, the government argues that providing these mandated procedures and embodying them in the MOU or other agreement is discretionary. That argument is meritless, unless by "discretionary" the government means that the federal courts have no jurisdiction to require the government to comply with the applicable statutory mandates. In common parlance, however, the procedures are not "discretionary." Courts have long held that the use of the directive "shall" denotes a requirement. *See In re New Haven Projects Ltd. Liability Co.*, 225 F.3d 283, 287–88 (2d Cir. 2000). Although the Attorney General has some discretion over grievance and appeal procedures to be followed in the event of a breach of the MOU, those procedures shall include, at a minimum, the guarantees outlined in subsections 3521(d)(1) and (f). And, as the statute directs, a description of those procedures must be incorporated into the MOU or written agreement with the program participant. JS's allegations, taken as true, and our own review of the sealed MOU and prisoner-witness agreement, demonstrate unequivocally that Congress's directive has not been followed in this case.

A review of the record on appeal reveals that JS did receive a pre-termination notice, and that he responded within the required amount of time via a notice of appeal and subsequent follow-up letter (in which he stated he had filed an appeal). OEO, however, gave no

3

consideration to what JS had set forth in his appeal statement, thereby depriving JS of any meaningful ability to challenge OEO's finding of the "substantial breach" that resulted in his Program termination. JS was denied precisely what the statutory procedural guarantees were meant to secure. This is truly troubling, and it is unfortunate, indeed, that the federal courts cannot review the adequacy of OEO's conduct in this regard and its ostensible breach of the substantive requirements Congress has mandated.

While I fully concur in the judgment, I express some hope that Congress may choose to review and audit compliance with, or even revise, 18 U.S.C. § 3521 to provide greater enforcement of the procedural protections it intended Program participants to have. At the very least, this is a matter that the Office of the Inspector General of the U.S. Department of Justice may wish to review. I respectfully request the Clerk of Court forward a copy of this opinion and concurrence to that Office.