Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 18, 2002        Decided July 8, 2003

No. 01-3118

UNITED STATES OF AMERICA,
APPELLEE

v.

JERMAINE POWELL,
APPELLANT

————

Appeal from the United States District Court
for the District of Columbia
(No. 00cr00192–01)

————

*Gregory L. Poe*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*Barbara J. Valliere*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher*, *Roy W. McLeese III*, and *Roderick L. Thomas*, Assistant U.S. Attorneys.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: Ginsburg, *Chief Judge*, and Edwards and Garland, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Garland.

Garland, *Circuit Judge*: A federal jury in the District of Columbia convicted the appellant, Jermaine Powell, of unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Powell's sole contention on appeal is that the trial judge erred by admitting into evidence a prior consistent statement by the prosecution's chief witness, the officer who arrested the appellant. We conclude that any error in the admission of the statement was harmless, and we therefore affirm Powell's conviction.

I

On the night of April 9, 2000, in response to a radio call reporting a stolen bicycle, Officer Oscar Mouton of the Metropolitan Police Department drove to 210 Rhode Island Avenue in Northwest Washington, D.C. to interview the eight-year-old owner of the bike and his mother. According to the officer's trial testimony, the boy reported that his black bicycle, which was missing a seat, had been stolen. Two other neighborhood children reported that the thief was "down the street" on the bike at First and T Streets, N.W. Trial Tr. at 51. Officer Mouton drove to that intersection in his patrol car and, not seeing anyone with a bike there, continued west on T Street, where he soon encountered appellant Powell. Powell was on a black bicycle without a seat, and, according to Mouton's testimony, was wearing a canvas coat and baseball cap. Officer Mouton parked his car, walked up to Powell, and asked him where he had gotten the bike. Powell responded that "the guy down the street" had given it to him. *Id.* at 54.

Holding onto the bicycle, Officer Mouton asked Powell to step over to the squad car. Instead, Powell ran. Mouton pursued Powell down a fairly well lit alley. The officer testified that, as Powell ran, he tossed off his jacket and cap. Mouton said that he heard a "thud" when the jacket hit the brick alley, and that when he reached the jacket he saw a gun

handle protruding from its pocket. *Id.* at 59. He then stopped chasing Powell and stayed with the weapon in order to prevent anyone else from taking it. Mouton radioed for assistance from a crime scene search officer and issued a "flash lookout" with Powell's description. *Id.* at 63. Another officer arrived within minutes, saw the jacket and gun, and agreed to stay with them while Mouton took off after Powell. Mouton soon found Powell, now wearing only a T-shirt, hiding under a piece of plywood leaning against a house at the end of the alley.

At this point, two more officers arrived to assist in the arrest. As he was being arrested, Powell looked at Mouton and said: "Man, that guy gave me the bike." *Id.* at 66. After the arrest, Mouton took the bicycle to the boy's apartment. But the boy told him that it was the wrong bike, and that the actual thief had been a thirteen-year-old boy with a handgun.

Powell did not testify at his trial. His mother and cousin testified that they had never seen the jacket or cap before, and a neighbor of the boy who lost the bicycle testified that the officer had been told when he first visited the boy's apartment that the thief was another boy with a gun. In closing argument, Powell's counsel contended that neither the jacket nor the gun belonged to Powell. The defense's theory was that Powell ran from the officer because he was afraid he had unwittingly been given a stolen bike, and that Mouton— seeking to be a "hero to a little kid," *id.* at 283—planted the jacket, cap, and gun.

The issue on appeal relates to Officer Mouton's testimony that he heard a "thud" when the jacket hit the ground. On cross-examination, defense counsel introduced two police reports filed by Officer Mouton at or near the time of the April 9, 2000 arrest, as well as the transcript of the officer's testimony at Powell's April 19, 2000 preliminary hearing. The cross-examination established that, although on each of those occasions Mouton had reported seeing a gun, he had not mentioned hearing a thud.

On redirect, the government sought to point out that Mouton had in fact mentioned a thud in his testimony before the grand jury on June 1, 2000. Defense counsel objected to the government's attempt to introduce the grand jury testimony. He argued that the testimony was hearsay and did not fall within the category of admissible prior consistent statements defined by Federal Rule of Evidence 801(d)(1)(B), as interpreted in *Tome v. United States*, 513 U.S. 150 (1995). The district court disagreed and permitted the government to introduce the testimony. Powell's counsel used re-cross-examination to make clear that the police reports and preliminary hearing preceded Mouton's testimony in the grand jury, and that neither the defendant nor his counsel was present at the grand jury proceeding. On further redirect, Mouton testified that he had not described the thud in his police reports because "[w]hen you try to document the word thud, it doesn't sound very professional." Trial Tr. at 159.

The jury convicted Powell of one count of unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Powell now appeals, challenging his conviction on the ground that the admission of Officer Mouton's prior consistent statement was reversible error.

## II

Federal Rule of Evidence 802 bars the admission of hearsay except as otherwise permitted by the rules or by statute. Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Rule 801(d), however, classifies certain statements as "not hearsay." As relevant here, the rule states:

> (d) Statements which are not hearsay. A statement is not hearsay if—
>
>> (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the state-

ment is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. . . .

FED. R. EVID. 801(d). In *Tome v. United States*, 513 U.S. 150 (1995), the Supreme Court held that Rule 801(d)(1)(B) "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive." *Tome*, 513 U.S. at 167.

There is no question but that Officer Mouton's grand jury testimony satisfies the first part of Rule 801(d): it is a prior statement by a witness who testified at trial and was subject to cross-examination concerning the statement. There is also no dispute that it was consistent with Mouton's trial testimony: on both occasions, he testified that he heard a thud when Powell's jacket hit the ground.

The controversy is whether the statement satisfies the premotive requirement elucidated in *Tome*. The government argues that the implication of the defense counsel's cross-examination of Officer Mouton, which the prior statement was offered to rebut, was that Mouton's motive to fabricate arose at the trial. It further contends that, regardless of when the motive to fabricate arose, *Tome* does not bar the use of postmotive prior consistent statements for the limited purpose of rehabilitating a witness rather than proving the truth of the matter asserted. Powell responds that his charge was that Mouton's motive to fabricate arose sometime before the date of the grand jury testimony—no later than the date of the preliminary hearing and as early as the time of the arrest—and that admission of the testimony therefore transgressed the rule enunciated in *Tome*. He further argues that *Tome* leaves no room for a "rehabilitation" exception and that, in any event, the trial judge's jury instructions could easily have led the jury to believe that the statement was being admitted for its truth.

We need not resolve these questions. Even if the district court erred in admitting the grand jury transcript, the "harmless error" rule of Federal Rule of Criminal Procedure 52(a) provides that any error that "does not affect substantial rights" shall be disregarded. *See United States v. Olano*, 507 U.S. 725, 734 (1993).[1] The Supreme Court has articulated two versions of this rule, one for nonconstitutional errors and one for errors of constitutional dimension. A constitutional error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see Neder v. United States*, 527 U.S. 1, 7 (1999). By contrast, the standard for nonconstitutional error, as set forth in *Kotteakos v. United States*, provides that such an error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." 328 U.S. 750, 776 (1946); *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Johnson*, 216 F.3d 1162, 1166 n.4 (D.C. Cir. 2000). In both circumstances, Rule 52(a)—which applies where, as here, the defendant timely objected in the district court—places the "burden of showing the absence of prejudice" on the government. *Olano*, 507 U.S. at 741; *see id.* at 734.

Powell contends that the admission of Mouton's prior statement violated the Confrontation Clause of the Sixth Amendment. That contention is plainly wrong. As the Supreme Court held in *California v. Green*, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." 399 U.S. 149, 158 (1970). Here, the declarant (Mouton) testified as a witness and was subject to full cross-examination about both his present testimony and his prior statement, an opportunity that defense counsel used effectively. Accordingly, the alleged error was at most a misapplication of the Federal Rules

---

[1] *See also* FED. R. EVID. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

of Evidence, and the *Kotteakos* standard therefore applies. *See United States v. Lampkin*, 159 F.3d 607, 615 (D.C. Cir. 1998) (applying *Kotteakos* to assess whether the admission of a prior consistent statement by a testifying witness was harmless error); *see also United States v. Clarke*, 24 F.3d 257, 267 (D.C. Cir. 1994) (applying the *Kotteakos* standard to admission of hearsay testimony).[2]

Applying that standard, we conclude that even if there were error in the admission of Mouton's prior consistent statement, that statement did not have "a substantial and injurious effect or influence" on the outcome of Powell's trial. First, the evidence against Powell was strong, although not overwhelming. Officer Mouton testified that Powell ran when Mouton tried to question him, an action readily attributable to his fear of conviction if caught with a firearm. Mouton further testified that Powell tossed off his jacket as he ran, and that Mouton saw the gun protruding from the jacket's pocket after it landed on the ground. A second officer testified that, when he arrived minutes later, he saw both the gun and the jacket on the ground and waited with them while Mouton pursued the defendant. Officers testified that, when caught, Powell was wearing only a T-shirt, that the night was cold, and that the T-shirt was insufficient clothing for the weather[3]—all supporting Mouton's testimony that the jacket with the gun belonged to Powell.

---

[2] Powell cites our decisions in *United States v. Mitchell* and *United States v. Jordan* for the proposition that, "because admission of hearsay implicates the Sixth Amendment's Confrontation Clause, errors must be harmless beyond a reasonable doubt." *Mitchell*, 49 F.3d 769, 778 (D.C. Cir. 1995) (quoting *Jordan*, 810 F.2d 262, 264 (D.C. Cir. 1987)). Neither case, however, involved the admission of a prior statement that had been made by a testifying witness, and in *Jordan*, we expressly stated that it was "[t]he government's inability to produce [the witness] at trial" that gave rise to the Confrontation Clause challenge. *Jordan*, 810 F.2d at 264.

[3] By contrast, Officer Mouton himself was wearing a T-shirt, uniform shirt, sweater, and body armor.

Second, the theory of Powell's defense was implausible. The theory—that Mouton planted the gun, jacket, and cap in the alley—required the jury to believe that Mouton was carrying an extra jacket and gun around with him, waiting for the appearance of a coatless suspect upon whom they might be foisted. Defense counsel presented no direct evidence to contradict Mouton's testimony as to what took place in the alley, and the only evidence in support of the theory was the testimony of Powell's mother and sister that they had never seen him wear the jacket or cap—although both conceded that they did not know what he had been wearing on the night of the arrest. Lacking much in the way of evidence, Powell's counsel argued that Mouton had a motive to plant the weapon: he wanted to "be a hero" to the little boy whose bike was taken. *Id.* at 283. What was missing, however, was a connection between the asserted motive and the planting of the gun. There was, after all, no dispute that Mouton thought that he had found, and that he would be able to return, the boy's stolen bike—certainly sufficient to make him a hero in the boy's eyes.

Third, Powell did not suffer perceptible prejudice as a consequence of the admission of the prior consistent statement. This was not, for example, a case in which the introduction of one witness' prior statement was used as an excuse to put more credible witnesses on the stand to present it. *See Tome*, 513 U.S. at 165 (noting concern that the government had "present[ed] a parade of sympathetic and credible witnesses who did no more than recount [the witness'] detailed out-of-court statements to them"). Rather, Officer Mouton simply read aloud the transcript of his own grand jury testimony. Moreover, the prior statement was wholly cumulative: it did nothing more than repeat what Mouton had already said in his direct examination. This "extra helping of what the jury had heard before.... mattered little." *United States v. Simonelli*, 237 F.3d 19, 29 (1st Cir. 2001); *see Lampkin*, 159 F.3d at 615 (finding that the admission of a witness' prior consistent grand jury testimony was harmless because it "was merely cumulative of other evidence adduced at trial"); *Clarke*, 24 F.3d at 267 (holding

that hearsay that repeated direct testimony was "harmlessly cumulative"); *United States v. Albers*, 93 F.3d 1469, 1484 (10th Cir. 1996) (holding that because a prior consistent statement "merely repeated" testimony to the same effect, it could not have had a substantial influence on the verdict).

Powell insists that he did suffer significant prejudice. He notes that his principal defense was to attack Mouton's credibility by exposing discrepancies in his trial testimony. He asserts that Mouton's testimony about the thud was the most powerful of those discrepancies, and that admission of the prior statement "drove a stake into the heart of the defense." Appellant's Br. at 26. We agree that the other discrepancies were less powerful; indeed, they are too immaterial to require discussion. But we do not agree that Powell's attack on the thud had much persuasive value, or that the trial court disabled that attack by admitting the prior statement.

First, the attack on the thud had limited utility because the thud itself added little to the government's case. Mouton had already testified that he *saw* the handle of a gun sticking out of the jacket as it fell. Although Powell claims that the evidence of sound bolstered the evidence of sight, no such bolstering was required. The theory of the defense was not that it was difficult to see in the alley (there was no claim that "it was a dark and stormy night"), but that Mouton was lying about what he saw there. If the jurors thought Mouton was lying about what he saw, there would have been no reason to believe he was telling the truth about what he heard. Conversely, if they believed Mouton's testimony about what he saw, the added testimony about what he heard could not have made the difference between a not-guilty and a guilty verdict. And because the "thud" was an insignificant part of the government's case, there was little impeachment value in demonstrating that Mouton had left that minor detail out of his original reports and testimony.

Second, the introduction of Mouton's prior statement did not significantly impair the ability of Powell's counsel to impeach Mouton for his failure to mention the thud from the

start. Powell's counsel cross-examined Mouton about that initial failure, and the court permitted him to re-cross the officer after the prior consistent statement was admitted. Counsel thus had a fair opportunity, which he used effectively, to make clear that the police reports and preliminary hearing preceded Mouton's grand jury testimony and that the latter was the first time Mouton mentioned the thud. This, in turn, gave the jurors the opportunity to draw whatever inference they thought appropriate from the fact that Mouton did not mention the sound until two months after the arrest. *See Albers*, 93 F.3d at 1484 (holding that vigorous cross-examination regarding an improperly admitted prior consistent statement rendered its admission harmless error); *United States v. Hernandez*, 227 F.3d 686, 696 (6th Cir. 2000) (noting that cross-examination gave the jury the opportunity to consider the witness' "motive to testify falsely at the time" of the prior consistent statements, which, together with the cumulative nature of the statements, rendered their admission harmless).

There was, of course, one line of attack on Mouton's credibility that the admission of the prior statement did foreclose. Once the jury was informed that the officer had mentioned the thud before the grand jury in June 2000, Powell could not argue that the May 2001 trial was the first time Mouton had ever mentioned it. But there was no cognizable prejudice in disabling that line of attack, because it had never been available to Powell in the first place. It would have been improper for Powell to make such an argument because it was untrue. And, as counsel conceded at oral argument, had Powell nonetheless made the argument, he would (at a minimum) have opened the door to rebuttal with the prior consistent statement to prevent the jury from being misled.

In sum, in light of the relative strengths of the parties' cases and the absence of material prejudice to Powell from admission of the prior statement, we conclude that any error in admitting that statement did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos*, 328 U.S. at 776.

### III

For the foregoing reasons, the judgment of the district court is

*Affirmed.*