# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 13, 2004        Decided March 8, 2005

No. 03-3024

UNITED STATES OF AMERICA,
APPELLEE

v.

GEORGE THOMAS COUMARIS,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00438-01)

———

*Leslie Ann Gerardo*, appointed by the court, argued the cause and filed the brief for appellant.

*Valinda Jones*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher*, *Thomas J. Tourish, Jr.*, *Barbara E. Kittay*, and *Stuart G. Nash*, Assistant U.S. Attorneys.

Before: EDWARDS, HENDERSON, and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: A jury convicted defendant George Coumaris of conspiring to help another person evade arrest by using fraudulent identification documents and Social Security numbers. Coumaris challenges his conviction, disputing several evidentiary rulings by the district court, and also challenges his sentence. We affirm Coumaris' conviction. Upon the government's motion, we remand the case for resentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

I

In November 2002, a federal jury in the District of Columbia convicted Coumaris, an attorney with the Internal Revenue Service (IRS), of conspiring to commit crimes against the United States, in violation of 18 U.S.C. § 371. The objects of the conspiracy were to help Coumaris' lover, Chris Jenkins, evade arrest for violating probation and parole obligations in the Commonwealth of Virginia, and to obtain and use fraudulent identification documents and Social Security numbers in furtherance of that end.

The government's trial evidence showed that Jenkins and Coumaris began their relationship in March 1998. At the time, Coumaris was aware that Jenkins was on probation and parole supervision in Virginia stemming from the latter's 1989 convictions for burglary, grand larceny, and robbery, and that the terms of Jenkins' probation required him to abstain from using alcohol. Nevertheless, Jenkins continued drinking, and in December 1998 he failed a urinalysis test and was directed by his probation officer to enter a 90-day inpatient treatment program. After the 90 days, Jenkins was transferred to a residential outpatient program that allowed him to work during the day. Instead of working, Jenkins spent his days with

Coumaris, who falsely represented that he was Jenkins' employer -- the fictitious "T and T Construction" company.

When Jenkins returned to the outpatient facility drunk one day, he was ordered to enter an 18-month inpatient program. Instead of enrolling in the program, Jenkins began hiding from Virginia authorities at Coumaris' home in the District of Columbia. As a result, the Virginia Parole Board and the Fairfax County Circuit Court issued warrants for Jenkins' arrest.

Coumaris helped Jenkins evade the authorities by providing him with false identification. Coumaris first obtained an identification card for Jenkins in the name of Brian Flowers, one of Coumaris' former lovers. After Jenkins was arrested under Flowers' name for driving without a license, Coumaris gave Jenkins identification belonging to another former lover, Louis Geiman, who had died a few years earlier. In addition to numerous membership cards, Coumaris helped Jenkins procure West Virginia and District of Columbia voter registration cards, a "Federal Identification System" card, and a West Virginia non-driver's identification card, all in Geiman's name. To obtain these cards, Coumaris and Jenkins used Flowers' and Geiman's Social Security numbers.

In November 1999, Jenkins ended his relationship with Coumaris and moved out of the latter's home. After Jenkins left him, Coumaris falsely reported to both Fairfax County, Virginia and Washington, D.C. police that Jenkins had robbed him at gunpoint, leading to another warrant for Jenkins' arrest. Over the next several months, Coumaris called the Fairfax County police several times with information regarding Jenkins' whereabouts, sometimes remaining anonymous and sometimes identifying himself as an IRS agent.

Jenkins was finally arrested in March 2000 and spent almost three months in pretrial detention on the false robbery charge. Based on information that Jenkins provided after his arrest, federal and state authorities began investigating Coumaris. In May 2000, officers executed a search warrant at Coumaris' home, where they discovered marijuana, drug paraphernalia, and child pornography. Coumaris was subsequently interviewed by a Metropolitan Police Department (MPD) officer and an FBI agent about both the Jenkins conspiracy and the incriminating evidence discovered in his home. In an effort to hinder their investigation, Coumaris told the FBI's Washington Field Office that the MPD officer and FBI agent were trafficking drugs in his neighborhood.

On December 7, 2001, a federal grand jury indicted Coumaris on a single count of conspiracy, and on numerous counts of fraud in connection with identification documents and Social Security numbers. The case proceeded to trial in October 2002. At trial, Coumaris informed the court that he planned to present several character witnesses, who would testify to his honesty and truthfulness. The government filed an *in limine* motion seeking permission to cross-examine those witnesses about whether they had heard of several past acts by Coumaris that were assertedly inconsistent with those character traits. In response to the motion, the court first ruled that the government would be allowed to cross-examine regarding Coumaris' prior arrests for grand larceny and shoplifting, and a District of Columbia Court of Appeals opinion that found Coumaris to have made false representations to a city regulatory board. Upon hearing the trial court's ruling, Coumaris' counsel stated: "I will listen to the other rulings, but I would suspect based upon at least your initial ruling" that "I would just withhold any character witnesses." 10/29/02 p.m. Tr. at 15. The court then ruled that it would also allow the government to cross-examine the character witnesses about Coumaris' importation of

marijuana from the Netherlands under a false name, and about his non-consensual recording of telephone conversations made by guests from his home. Coumaris never called the character witnesses to testify.

During the trial, Coumaris also attempted to introduce as exhibits a scrapbook and a police report. The scrapbook contained memorabilia concerning Geiman, the former lover whose identification Coumaris had given to Jenkins. The police report concerned the anonymous telephone calls that Coumaris had made about Jenkins. The court barred the introduction of both exhibits.

The jury convicted Coumaris of conspiracy but deadlocked on the remaining counts. The court declared a mistrial on the deadlocked counts and, pursuant to the United States Sentencing Guidelines, sentenced Coumaris to 48 months' imprisonment on the conspiracy count. Coumaris appealed, challenging the court's ruling on the *in limine* motion, its decisions barring introduction of the scrapbook and police report, and its calculation of the sentence.

After the parties filed their appellate briefs, the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531, 2538 (2004), which held that Washington State's determinate sentencing regime violated the Sixth Amendment. Coumaris then filed a letter with this court, pursuant to Federal Rule of Appellate Procedure 28(j), contending that *Blakely* also cast doubt on the constitutionality of the United States Sentencing Guidelines. The day Coumaris' letter was filed, the Supreme Court granted certiorari in *United States v. Booker*, No. 04-104, and *United States v. Fanfan*, No. 04-105, each of which presented the question of whether an application of the Guidelines violated the Sixth Amendment. We ordered the parties to file supplemental briefs after *Booker* and *Fanfan* were

decided, and deferred resolution of this case until that time. On January 12, 2005, in *United States v. Booker*, the Supreme Court held that the imposition of enhanced sentences under the Guidelines violated the Sixth Amendment, and that the statutory provision that made the Guidelines mandatory had to be severed and excised. 125 S. Ct. 738, 756 (2005). Thereafter, the government moved to vacate Coumaris' sentence and remand for resentencing.

In Part II, we address Coumaris' challenges to his conviction. In Part III, we discuss the disposition of his sentence in light of *Booker*.

II

A district court's decision regarding the admissibility of evidence or the scope of cross-examination constitutes error only if it is an abuse of discretion. *See United States v. Whitmore*, 359 F.3d 609, 616 (D.C. Cir. 2004); *United States v. White*, 887 F.2d 267, 274 (D.C. Cir. 1989). If the defendant timely objected to such an error at trial, appellate review is still limited by the "harmless error" standard: an error may be corrected only if it affects the defendant's "substantial rights." FED. R. CRIM. P. 52(a). "[I]n most cases," this "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). If the defendant did not timely object at trial, review is limited by the "plain error" standard: "[T]here must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (internal

citations and quotation marks omitted); *see* FED. R. CRIM. P. 52(b).[1]

With this understanding of the limitations on our authority, we proceed to examine the evidentiary rulings that Coumaris maintains require reversal of his conviction.

## A

Coumaris first contends that the district court erred in granting the government's *in limine* motion to cross-examine his proposed character witnesses as to whether they had heard (1) that he had imported marijuana from the Netherlands using a false name, and (2) that he had illegally recorded telephone conversations without the consent of the participants. Coumaris concedes that, when a defendant offers witnesses to testify regarding his character, on cross-examination "inquiry is allowable into relevant specific instances of conduct," FED. R. EVID. 405(a), "including prior convictions or arrests of the accused," *United States v. Lewis*, 482 F.2d 632, 638 (D.C. Cir. 1973). Coumaris Br. at 19. But Coumaris also correctly notes that such inquiry is limited to instances that are relevant to the traits of character about which the witnesses have testified. *See* FED. R. EVID. 404(a)(1); *Lewis*, 482 F.2d at 638 (holding that a character witness may be asked "whether he has heard reports of particular events . . . which are inconsistent with the reputation to which he has testified"). Coumaris' counsel notified the district court that he intended to call the character

---

[1]The question of whether the defendant's substantial rights were affected "normally requires the same kind of inquiry" under the harmless and plain error standards, "with one important difference." *Olano*, 507 U.S. at 734. Under the plain error standard, it "is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.*

witnesses to testify to Coumaris' honesty and truthfulness. 10/29/02 p.m. Tr. at 8. Coumaris contends that the two instances of conduct in question go not to his honesty and truthfulness, but to his general law-abidingness, which was not to be the subject of the witnesses' testimony.

Whatever its merits, Coumaris clearly waived his objection to the district court's *in limine* ruling by failing to call the character witnesses to testify. In *Luce v. United States*, the Supreme Court held that a defendant who elects not to testify waives his right to challenge an *in limine* ruling that would have allowed the government to use a prior conviction to impeach him. 469 U.S. 38, 43 (1984). The Court concluded that, when the defendant does not take the stand, any harm flowing from the decision to allow the government to use the prior conviction is "wholly speculative." *Id.* at 41. As the Court explained:

> The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. . . . When the defendant does not testify, the reviewing court also has no way of knowing whether the Government would have sought to impeach with the prior conviction. . . . [Additionally,] a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify. . . . Even if these difficulties could be surmounted, the reviewing court will still face the question of harmless error. . . . Requiring that a defendant testify in order to preserve [such] claims will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole . . . .

*Id*. at 41-42. We see no reason -- and Coumaris has not suggested any -- why these considerations are not equally

applicable when it is a character witness, rather than the defendant himself, who might have testified but for the *in limine* ruling.

Moreover, in this case the conclusion that the defendant waived his objection is even clearer than it was in *Luce*. Here, the district court initially granted the government's request to cross-examine Coumaris' character witnesses about three *other* matters: Coumaris' prior arrests for grand larceny and shoplifting, as well as a District of Columbia Court of Appeals opinion finding that Coumaris had made false representations to the District's Alcohol Beverage Control Board. Coumaris did not object then -- and does not object now -- to the court's ruling that cross-examination on those topics was permissible. *See* Coumaris Br. at 20 n.6. Rather, in response to that ruling, Coumaris' trial counsel said: "I would suspect based upon at least your initial ruling on [the prior arrests], that I would just withhold any character witnesses." 10/29/02 p.m. Tr. at 15. Counsel added that he would "talk it over with Mr. Coumaris," but "probably the character witnesses have already been scratched based upon" the court's initial ruling. *Id.*

Coumaris thus represented to the district court that he likely would not call his character witnesses irrespective of the court's subsequent decision on the pseudonymous marijuana purchases and the non-consensually recorded conversations. In this context, any prejudice to Coumaris as a result of the court's decision to allow cross-examination on those topics is "wholly speculative," since we "cannot assume that the adverse ruling motivated [the] decision not to" call the witnesses. *Luce*, 469 U.S. at 41-42. Accordingly, the conclusion that Coumaris waived his objection follows *a fortiori* from *Luce*.

B

Coumaris also challenges the district court's refusal to admit two proposed exhibits.

The first rejected exhibit was a scrapbook containing memorabilia of Coumaris' deceased lover, Louis Geiman. The scrapbook included identification documents belonging to Geiman, as well as pictures and a funeral program. At trial, the government proved that Coumaris had given Jenkins identification documents in Geiman's name, and that he had helped Jenkins acquire other such documents. Coumaris sought to introduce the scrapbook in order to demonstrate that he had saved Geiman's documents for "sentimental, not illicit, reasons," and that "Jenkins could have independently obtained the information necessary to assume Geiman's identity." Coumaris Br. at 22-23.

Coumaris correctly argues that the district court erred in finding the scrapbook inadmissible because it contained hearsay. As the defendant notes, he offered the scrapbook for the nonhearsay purposes of showing why he had Geiman's identification documents and how Jenkins might have obtained them, and not to prove the truth of the matters asserted by those documents (e.g., Geiman's identity). *See* FED. R. EVID. 801(c). Nonetheless, we conclude that the error was harmless, because it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776 (1946); *see United States v. Powell*, 334 F.3d 42, 46 (D.C. Cir. 2003) (noting that the *Kotteakos* harmless error standard is applicable to misapplications of the Federal Rules of Evidence). Although the district court held that "the whole book is not going to come in," it permitted Coumaris' witness to describe the contents of the scrapbook to the jury and to testify that the scrapbook was kept in a place that was accessible to Jenkins. 10/29/02 p.m. Tr. at 89-91; *see id.* at 84-85. Indeed, Jenkins himself testified that he had looked at the scrapbook and

had had access to it. 10/25/02 a.m. Tr. at 60; 10/28/02 a.m. Tr. at 27-29. Any additional benefit that Coumaris would have received from admission of the scrapbook itself was minimal and speculative. *See United States v. Warren*, 42 F.3d 647, 656 (D.C. Cir. 1994) (finding a hearsay error harmless because the excluded evidence "was cumulative of other evidence heard by the jury").

Coumaris' second evidentiary challenge is to the district court's refusal to admit a police report "that detail[ed] what police officers did in relation to an anonymous call . . . with respect to arresting Christopher Jenkins." 10/29/02 a.m. Tr. at 28-29. Coumaris offered the report to show that he had not harbored Jenkins, but rather had assisted the Fairfax County police in apprehending him. At trial, Coumaris offered -- and the court rejected -- the report under the hearsay exception for business records set forth in Federal Rule of Evidence 803(6). On appeal, Coumaris argues that the report should have been admitted either under Rule 803(6) or under Federal Rule of Evidence 803(8)(C), which provides a hearsay exception "against the Government in criminal cases" for reports setting forth "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." FED. R. EVID. 803(8)(C).

As we have noted above, a district court's evidentiary ruling is error only if it constitutes an abuse of discretion. *See United States v. Whitmore*, 359 F.3d 609, 616 (D.C. Cir. 2004). But even if we were to conclude that the district court abused its discretion by excluding the police report (an issue we do not decide), the exclusion of the report, like the exclusion of the

scrapbook, was harmless.[2]   Although the district court refused to admit the document, it allowed testimony on the same point that Coumaris had offered the report to prove: The police officer called by Coumaris to introduce the report was permitted to testify that Coumaris' anonymous tips regarding Jenkins' whereabouts were "accurate."   10/29/02 a.m. Tr. at 26-27. There is no reason to believe that admission of the report itself would have made any difference in the outcome of the trial.

In sum, we conclude that none of Coumaris' attacks on the district court's evidentiary rulings are sufficient to justify reversal of his conviction.

### III

Finally, Coumaris challenges several of the district court's Sentencing Guidelines determinations.   Those challenges include claims that the court improperly applied enhancements to his base offense level for abuse of a position of trust, for obstruction of justice, and for more-than-minimal planning. *See* U.S.S.G. §§ 3B1.3, 3C1.1, 2F1.1(b)(2)(A).  We do not reach these challenges because we grant the government's motion to remand the case for resentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

---

[2]Because Coumaris did not raise the Rule 803(8)(C) argument in the district court, we review the court's failure to admit the report on that theory only for plain error.   *See Warren*, 42 F.3d at 657 (reviewing a Rule 803(8)(C) argument for plain error because the defendant's argument at trial had been limited to Rule 803(6)).  As discussed at note 1, *supra*, under the plain error standard it "is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734.  Thus, the conclusion that there was no plain error in the exclusion of the report follows *a fortiori* from the conclusion (set out in the text above) that any error was harmless.

In *Blakely v. Washington*, the Supreme Court held that Washington State's determinate sentencing regime violated the rule of *Apprendi v. New Jersey*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 124 S.Ct. 2531, 2536 (2004) (quoting *Apprendi*, 530 U.S. 466, 490 (2000)); *see id.* at 2538. In *Booker*, the Court applied *Blakely* to the United States Sentencing Guidelines, holding that the imposition of enhanced sentences under the Guidelines violates the Sixth Amendment. 125 S. Ct. at 756. The Supreme Court cured this constitutional defect by severing the provisions of the Sentencing Reform Act that made the Guidelines mandatory, thereby rendering them "effectively advisory." *Id.* at 757. Under this new sentencing regime, a sentencing court is required "to consider Guidelines ranges" applicable to the defendant, but is permitted "to tailor the sentence in light of other statutory concerns as well." *Id.*

The United States has moved to vacate Coumaris' sentence and to remand for resentencing. The government concedes that the mandatory enhancements of Coumaris' sentence were unconstitutional under *Booker*. It further agrees with Coumaris that, by noting in his objections to the Presentence Investigation Report that *Apprendi* had rendered the Guidelines problematic, Coumaris "made a sufficient objection in the district court to preserve a Sixth Amendment challenge to his sentence." Gov't Mot. to Vacate and Remand for Resentencing at 2-3. This means that the *Booker* challenge here is governed by the harmless error standard appropriate for constitutional error, which the Government states it cannot satisfy. That is, the government concedes that it cannot demonstrate "beyond a reasonable doubt that the error complained of did not contribute to the [sentence] obtained." *Id.* at 3 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)); *see Powell*, 334 F.3d at 45

(noting that the *Chapman* harmless error standard applies to constitutional errors).

Although Coumaris agrees that his sentence should be vacated and remanded, he urges us to resolve his specific challenges to the district court's application of the Guidelines before remanding. Coumaris Resp. to Gov't Mot. to Vacate and Remand for Resentencing at 2. We decline to do so. Because the district court might impose a different sentence on remand, and because the parties might choose not to appeal that sentence, consideration of objections to the court's original guidelines calculations would be premature at best and unnecessary at worst.

## IV

For the foregoing reasons, we affirm George Coumaris' conviction. We also grant the government's motion to vacate his sentence and to remand the case for resentencing in conformity with *United States v. Booker*.

*So ordered.*