# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 3, 2006        Decided June 5, 2007

No. 05-3066

UNITED STATES OF AMERICA,
APPELLEE

v.

COLLIN BENTLEY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 03cr000388-01)

*Daniel K. Dorsey* argued the cause and filed the brief for appellant.

*Barry Wiegand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III*, *David B. Goodhand*, and *Alexander D. Shoaibi*, Assistant U.S. Attorneys.

Before: GARLAND and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: After four days of trial, a jury convicted defendant Collin Bentley of four drug and gun crimes. On this appeal, Bentley argues that his convictions should be set aside because several items were inadvertently sent to the jury room during the course of the jury's deliberations -- specifically, an envelope containing cash that was described at trial but never entered into evidence, and police labels attached to two bags containing drug evidence. We conclude that the errors were harmless and therefore affirm the judgment of the district court.

I

On June 18, 2003, officers of the Metropolitan Police Department (MPD) executed a search warrant at 901 Hamilton Street, N.W. in Washington, D.C. When the officers entered the house, Bentley was standing in the doorway to an upstairs bedroom. They found $10 and a rock of cocaine base in his pocket. Under the bed in the bedroom was a locked safe containing thirteen ziplock bags of cocaine base, $4,816 in cash, and a digital scale. Elsewhere in the room, the officers discovered numerous other ziplock bags of cocaine base and marijuana, additional empty ziplocks, razor blades with cocaine residue, $620 in cash, two semi-automatic pistols, and a ring of keys. In all, the officers recovered approximately 50 grams of cocaine base, 100 grams of marijuana, and $5,446 in cash. Officer Bryan DiGirolamo put the cocaine base into one plastic evidence bag, the marijuana into another, and heat-sealed both bags. He put the cash into a property envelope.

On September 4, 2003, a grand jury returned a four-count indictment against Bentley and Fern Coates, who was also present at 901 Hamilton Street when the police executed the search warrant. Bentley was charged with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Bentley and Coates were both charged with possession with

intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); and using, carrying, and possessing a firearm during a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1).

The case went to trial in January 2004. The bulk of the government's evidence consisted of the testimony of four MPD officers who participated in the search. The court admitted into evidence most of the items described above, including the guns, scale, safe, ziplock bags, and heat-sealed evidence bags containing the cocaine base and marijuana. Although the government's witnesses testified about the recovery of the money, and the envelope of cash was identified as an exhibit, the prosecutor did not offer it into evidence.

In addition to the defendants' presence in the house, the government relied on several pieces of evidence to connect them directly to the contraband that the police recovered during the search. First, an MPD officer testified about the ring of keys he found in the bedroom of the house: one key opened the safe containing the drugs, cash, and scale; one opened the front door of 901 Hamilton Street; and the last two opened the door and started the ignition of a white 1990 Chevrolet Lumina that was parked outside the house when the officers arrived. Second, the officer testified that he had observed Bentley driving the Chevrolet on numerous occasions, and that he had never seen anyone else use the vehicle. Third, the government introduced a certified copy of Bentley's driver's license, which listed his address as 901 Hamilton Street. Finally, as to Coates, the prosecution introduced evidence that the closet in the bedroom where the contraband was found contained women's clothing, including a coat with Coates' driver's license and Social Security card in the pocket.

Neither defendant called witnesses or presented exhibits. After deliberating for a day, the jury convicted Bentley on all counts. Coates was acquitted.

Following the verdicts, the district court discovered that the jury had asked to see the drug evidence during its deliberations. In response, a deputy United States marshal had delivered a box of evidence to the jury room. The box contained, among other things, the heat-sealed drug exhibits, which had been admitted into evidence, as well as the property envelope containing $5,446 in cash, which had not been admitted.

Bentley moved for a new trial based on the jury's receipt of these items. As to the cash, Bentley argued that the money had not been admitted, and that its submission to the jury prejudiced his case. As to the bags of drugs, Bentley objected that each bag had a police label bearing (inter alia) his name and the Hamilton Street address. Although defense counsel conceded that he had not objected to the admission of the bags or their labels at trial, he explained that he had "asked the courtroom deputy clerk to let him know if the jury asked for the narcotics so that he could present his objection to the evidence label" to the court, and that the clerk had assured counsel that he would do so. *United States v. Bentley*, No. 03-0388-01, slip op. at 5 (D.D.C. May 6, 2004) (order denying motion for a new trial).

Following an evidentiary hearing, the district court first determined that the marshal's delivery of the evidence to the jury, without notifying the parties, had been "an honest mistake." *Id.* at 2. The court then concluded that, although the delivery constituted error, the cash was merely "the physical embodiment of evidence the jury had already seen and heard about," and that the defendant had "shown no prejudice from the jury's consideration" of the cash itself. *Id.* at 3. Regarding the drug exhibits, the court assumed for purposes of the motion that

counsel's discussion with the clerk constituted a timely objection, and that the court would have ordered the labels removed if it had heard that objection. *See id.* at 5-6. The court concluded, however, that the defendant was not prejudiced by submission of the labels. It therefore denied his motion for a new trial. *See id*. at 9.

Bentley now appeals, contending that the marshal's delivery of the cash and labeled drug evidence requires reversal of his conviction.

II

There is no dispute that the $5,446 in cash was never offered into evidence by the government or admitted by the district court. This court has held "that consideration by the jury of [material] not in evidence is error," and that if the error is not harmless, the conviction will be reversed. *United States v. Treadwell*, 760 F.2d 327, 339 (D.C. Cir. 1985) (citing *Dallago v. United States*, 427 F.2d 546, 553 (D.C. Cir. 1969)); *see United States v. Lampkin*, 159 F.3d 607, 614 (D.C. Cir. 1999). Where admission of the material would at worst have been nonconstitutional error (or no error at all), we apply the harmless error test set forth in *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946). *See Treadwell*, 760 F.2d at 339; *see also United States v. Holton*, 116 F.3d 1536, 1544 (D.C. Cir. 1997); *Dallago*, 427 F.2d at 560; *see generally United States v. Powell*, 334 F.3d 42, 45-46 (D.C. Cir. 2003) (describing the difference between the *Kotteakos* test for harmless nonconstitutional error, and the test for harmless constitutional error articulated in *Chapman v. California*, 386 U.S. 18, 24 (1967)). Bentley concedes that if the cash had been offered into evidence at trial, he would have had no basis for an objection, *see* Oral Arg. Recording at 1:55, and both parties agree that *Kotteakos* is the correct test for evaluating the submission of the cash to the jury,

*see id.* at 10:05.  Under that test, we will affirm a conviction if the government demonstrates that an error did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Kotteakos*, 328 U.S. at 776; *see Powell*, 334 F.3d at 45.

This court has further held that, "when an extraneous document submitted to the jury is merely cumulative of other, properly admitted evidence, the transmittal is harmless error." *Treadwell*, 760 F.2d at 339; *see Holton*, 116 F.3d at 1544 (finding that the erroneous submission of unredacted tapes was harmless because "the information on the tapes was only a portion of a larger set of facts that the prosecution put before the jury through proper means").  We agree with the district court that the physical presence of the money in the jury room was harmless because it was cumulative of properly admitted evidence.

Although the government never formally introduced the cash into evidence, two MPD officers testified that they recovered cash from the bedroom and described the locations where it was discovered.  Officer DiGirolamo testified that he seized $4,816 from the safe found under the bed, as well as $620 found in a dresser, *see* Trial Tr. 13-14, 29, 31 (Jan. 28, 2004); Officer Andre Wilson testified that he recovered $10 from Bentley's pocket, *see id.* at 118.  The total of these seizures was $5,446, the amount of money contained in the government exhibit that the marshal erroneously gave the jury.  In addition, and without defense objection, DiGirolamo "identified and examined the evidence bag that contained the currency in full view of the jury." *Bentley*, No. 03-0388-01, slip op. at 3; *see* Trial Tr. 14 (Jan. 28, 2004).  Moreover, the prosecution played for the jury (again, without objection) a videotape of the search, which showed both the cash inside the safe and the cash

recovered from the dresser. *Bentley*, No. 03-0388-01, slip op. at 2-3; *see* Trial Tr. 53 (Jan. 27, 2004).

Bentley does not dispute this characterization of the evidence that was before the jury. Nonetheless, he maintains that the cash was not merely cumulative for two reasons. First, he notes that, "[u]pon[] receiving the currency, the jurors were able to hold and smell" it. Appellant's Br. 19. But Bentley does not suggest, and we cannot imagine, a reason why the money's tactile and olfactory properties would have had a "substantial and injurious effect or influence" on the jury's verdict. *Kotteakos*, 328 U.S. at 776.

Second, Bentley charges that, with the cash in hand, the jury could have learned the denominations of the bills. This was prejudicial, he explains, because the government's expert testified that drugs are often sold in ten- and twenty-dollar transactions; hence, the presence of currency in those denominations could have supported the government's charge that the drugs found in the house were intended for distribution. But as defense counsel conceded at oral argument, there is nothing in the record to suggest that the currency actually *was* in tens and twenties. *See* Oral Arg. Recording at 2:55. Moreover, Bentley's trial strategy was not to dispute that the bedroom was the site of a drug-distribution operation, or that the cash was its proceeds. Indeed, that would have been a virtually hopeless proposition, given that the bulk of the money was recovered from a safe that also contained a multitude of bags of cocaine base, along with a digital scale. Instead, Bentley's defense was that the money and drugs did not belong to him. *See* Oral Arg. Recording at 4:55; *see also* Trial Tr. 29 (Jan. 27, 2004) (defendant's opening statement). The denominations of the bills had no relevance to that defense, and we therefore

perceive no way in which the defendant was prejudiced by the submission of the bills to the jury.[1]

### III

We next consider whether the jury's access to the labels attached to the bags of drug evidence was harmless under the *Kotteakos* test.[2]  The government argues that our review should be limited by the more stringent "plain error" standard, rather than the "harmless error" standard, because Bentley failed to object when the bags (with the labels attached) were introduced into evidence during the trial.  *See United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining the difference between the harmless error and plain error standards); *United States v. Coumaris*, 399 F.3d 343, 347 n.1 (D.C. Cir. 2005) (same).  The government is correct that when a defendant has failed to timely object to an error at trial, we apply plain error review even if he subsequently raised the issue in a motion for a new trial, as Bentley did here.  *See United States v. Thompson*, 27 F.3d 671,

---

[1]The facts of this case differ sharply from those of *United States v. Dallago*, where we held that the jury's consideration of a document not in evidence did require reversal.  427 F.2d at 560.  In that case, the document in question contained "inherent[ly] prejudicial" allegations, *id.*, "associating the accused with criminality not involved in the trial," *id*. at 554.  Moreover, those "allegations of illegality were plainly not cumulative to evidence relating to any of the offenses charged."  *Id*. at 559.

[2]The labels were filled in by Officer DiGirolamo, who testified at the trial and was subject to cross-examination.  We review the (assertedly) erroneous admission of hearsay by such a testifying declarant for harmless error under the *Kotteakos* test, rather than under the *Chapman* test applicable to constitutional error.  *See Powell*, 334 F.3d at 45; *see also United States v. Gurr*, 471 F.3d 144, 153 (D.C. Cir. 2006).

673 (D.C. Cir. 1994); *see also United States v. Roy*, 473 F.3d 1232, 1237 (D.C. Cir. 2007). This case, however, is complicated by the fact that Bentley's counsel presented his objection to the courtroom deputy clerk, who assured him that he would be given an opportunity to raise it with the court before the bags were given to the jury. In evaluating the objection, the district court assumed without deciding that this conversation preserved Bentley's objection, and that the court would have excluded the labels as hearsay had the objection reached it before the bags went to the jury room. Even with those assumptions, the district court declined to reverse the defendant's conviction, concluding that any error was harmless. Accepting the same assumptions arguendo, we agree with the court's conclusion.

The labels in question are pre-printed forms, known as PD 95s, that an MPD officer filled in after the search of 901 Hamilton Street. The two labels (one on the bag of cocaine base and the other on the bag of marijuana) are identical in all relevant respects. They contain blanks that the officer completed as follows: a blank for "Defendant," filled in with Bentley's name; a blank for "Address," filled in with "901 Hamilton Street NW"; and a blank for "Charge," inscribed with "PWID w/ Armed." App. 95-96.[3] The labels also listed Bentley's sex, race, height, weight, eye and hair color, and birthplace. Finally, the labels contain physical descriptions of the material inside each bag and administrative details such as the date, complaint number, and name and signature of the collecting officer. *See id.*

As Bentley's counsel conceded, all of this information was properly before the jury in some other form. *See* Oral Arg. Recording at 9:50. The drugs themselves were properly

---

[3]"PWID" is an acronym for "possession with intent to distribute."

admitted. The officer who filled in the labels testified at trial about every piece of information of consequence that they contained. His testimony, and that of the other searching officers, provided substantially more detail than did the shorthand notes on the PD 95s. And Bentley's own driver's license listed his address as 901 Hamilton Street.

Because the labels were merely cumulative of properly admitted evidence, even if they constituted hearsay, their inadvertent delivery to the jury was harmless. *See Treadwell*, 760 F.2d at 339-40 & n.20; *see also United States v. Clarke*, 24 F.3d 257, 267 (D.C. Cir. 1994); *United States v. DeLoach*, 654 F.2d 763, 771 (D.C. Cir. 1980). In *Treadwell*, for example, we found harmless error where a one-page document, which "did nothing more than restate in an abbreviated form the testimony" of a government witness, had been inadvertently sent to the jury room. 760 F.2d at 339-40; *cf. Gurr*, 471 F.3d at 152-153 & n.3 (holding that, even if hearsay, the admission of a report "was harmless because the preparer . . . testified [about the report] and [was] subject to cross-examination at trial"). Bentley contends that, even if the labels were cumulative, they were nonetheless prejudicial because they provided a "'neat condensation' of the government's theories." Appellant's Br. 23 (citing *United States v. Adams*, 385 F.2d 548 (2d Cir. 1967), and *United States v. Ware*, 247 F.2d 698 (7th Cir. 1957)). But the testimony of the officer who filled in the labels made clear that he did so merely to preserve the chain of custody of their contents. The jury was therefore aware that the labels served only an administrative function, rather than as an expression of the government's theory of the defendants' liability.[4] Indeed, although the bulk of

---

[4]*Cf. Treadwell*, 760 F.2d at 340 (distinguishing *Adams* and *Ware* on related grounds). For the same reason, we reject the defendant's contention that the labels independently suggested that Bentley was the target of the investigation that provided the basis for the search

the government's closing argument was devoted to a detailed review of the evidence linking Bentley to 901 Hamilton Street and the items found inside, it did not mention the PD 95s.

Bentley further contends that the labels were prejudicial because they listed only his name, and not that of co-defendant Coates, and that they therefore associated the drugs with him rather than her. Bentley claims that this is why the jury convicted him while acquitting Coates. We agree with the district court that this argument is unpersuasive. Throughout the trial, the government argued that Bentley and Coates jointly possessed the drugs. *See, e.g.*, Trial Tr. 44-45 (Jan. 29, 2004) (closing argument). As the district court explained, "[t]he government's theory of this case did not require or suggest that the jury choose between the two co-defendants." *Bentley*, No. 03-0388-01, slip op. at 7. The more plausible explanation for the jury's verdicts is simply that the government's case against Bentley was stronger: he was found in the doorway to the bedroom containing the contraband; his driver's license listed 901 Hamilton Street as his address; and the key to the safe containing the cocaine base was on the same ring as the keys to the car that an officer had seen him driving. By contrast, Coates was in another part of the house at the time of the search; her driver's license did not list 901 Hamilton Street; and she had never been seen driving the car.

Because the police labels were cumulative of properly admitted evidence and did not otherwise prejudice Bentley, we conclude that they -- like the $5,446 in cash -- did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos*, 328 U.S. at 776.

---

warrant.

12

IV

For the foregoing reasons, the judgment of the district court is

*Affirmed.*